UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIEL A. S.,[1]<br><br>*Plaintiff,*<br><br>v.<br><br>**FRANK BISIGNANO,**<br>**COMMISSIONER OF SOCIAL**<br>**SECURITY**,<br><br>*Defendant.* | No. 1:24-cv-07859<br><br>OPINION |

**APPEARANCES**:
Adrienne Freya Jarvis
800 North Kings Highway, Suite 304
Cherry Hill, NJ 08034

   *On behalf of Plaintiff.*

Anne Von Scheven
Catherine Elisabeth Hamilton
Paul B. Waxler
UNITED STATES ATTORNEY
SOCIAL SECURITY ADMINISTRATION
OFFICE OF PROGRAM LITIGATION
6401 Security Boulevard
Baltimore, MD 21235

   *On behalf of Defendant.*

**O'HEARN, District Judge.**

   This matter comes before the Court on Plaintiff Daniel A. S.'s ("Plaintiff") appeal from a denial of Social Security disability benefits and supplemental security income by the Commissioner of Social Security ("Commissioner"). (ECF No. 1). The Court did not hear oral

---

[1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

argument pursuant to Local Rule 78.1. For the reasons that follow, the Court **AFFIRMS** the Commissioner's decision.

I. <u>BACKGROUND</u>

The Court recites herein only those facts necessary for its determination on this appeal.

A. **Administrative History**

Plaintiff filed an application for a period of disability and Disability Insurance Benefits ("DIB") on March 17, 2020, alleging an onset date of disability beginning January 21, 2020, due to emphysema, schizophrenia, schizoaffective disorder, bipolar II, and generalized anxiety disorder. (AR 168, 462). Plaintiff's claims were denied initially on August 31, 2020, and upon reconsideration on November 17, 2020. (AR 168).

On January 11, 2021, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (*Id.*). A hearing was held on April 27, 2022. (AR 99–124). Plaintiff, who was represented by a non-attorney representative, testified, as did a Vocational Expert ("VE"). (*Id.*). The ALJ issued a decision denying Plaintiff's application on June 3, 2022. (AR 165–82). Plaintiff appealed the decision to the Appeals Council, which remanded the matter back to the ALJ for further review of Plaintiff's symptom evaluation on November 17, 2022. (AR 188–91).

On remand, a second hearing was held on April 5, 2023. (AR 36–98). Plaintiff, who was represented by counsel, testified, as did his mother, Lynn Smith, and a VE. (*Id.*). The ALJ issued another decision denying Plaintiff's application on October 4, 2023. (AR 13–28). Plaintiff appealed the decision to the Appeals Council, which affirmed on June 12, 2024. (AR 1–4). Plaintiff timely filed an appeal on July 18, 2024, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). (ECF No. 1).

### B. Plaintiff's Background and Testimony

Plaintiff was thirty-four years old at the time of his alleged onset date and had completed his high school education. (AR 26, 105). At the April 27, 2022 administrative hearing, Plaintiff testified that he previously worked as a short-order cook, prep cook, warehouse worker, and waiter. (AR 107, 116, 120–21).

Plaintiff testified[2] that he experiences severe episodes of anxiety and social anxiety, racing thoughts, and memory loss, which he asserts prevent him from working. (AR 43–45, 53, 109–12). He testified that he struggles to stay focused and requires supervision from his mother to remember his responsibilities. (AR 48–49, 111). Plaintiff testified that he cannot perform daily activities consistently without becoming overwhelmed and avoids driving places he is unfamiliar with due to anxiety. (AR 51–53, 61–68). He also reported chronic back and shoulder pain. (AR 115). Despite these claimed limitations, the record reflects that Plaintiff is able to complete tasks such as cooking, exercising at the gym, helping his mother paint, and driving to and from twice-weekly appointments. (AR 50, 68–69, 77). He also went on several vacations during the period of alleged disability and reported working part-time with a friend at a moving company. (AR 68–69, 116–17, 984).

### C. Medical History

Plaintiff has been examined by numerous medical professionals throughout the pendency of his disability claim. The Court will briefly summarize the relevant medical evidence for purposes of this appeal. This recitation is not comprehensive.

---

[2] The cited testimony comes from both Plaintiff's initial April 27, 2022 administrative hearing and his second April 5, 2023 hearing after the matter was remanded.

On January 21, 2020, the date of the alleged onset of disability, Plaintiff was admitted for inpatient behavioral health treatment after a psychotic episode in which he exhibited "bizarre" and "irritable" behavior and increasing paranoia. (AR 630). At the time of admittance, Plaintiff had a history of hospitalizations and treatment for drug induced psychosis. (AR 635, 833, 1288–89, 1501). During one such hospitalization in 2014, he was diagnosed with bipolar I with psychosis and anxiety disorder. (AR 639). However, prior to the January 2020 hospitalization, Plaintiff was not taking any medication for his schizoaffective disorder. (AR 636, 1522). During inpatient treatment in January 2020, he was diagnosed with schizophrenia and polysubstance abuse. (AR 633). Although Plaintiff initially refused psychiatric medications, he began a medication regimen while hospitalized, and his symptoms gradually improved. (AR 631). Plaintiff was discharged from inpatient care with prescriptions for Haldol, Zyprexa, and Cogentin on February 28, 2020, after an "adequate" mental examination. (AR 631, 639). Since being discharged and continuing treatment, Plaintiff's case manager described Plaintiff as making sustained positive improvement. (*See e.g.*, AR 2178, 2362).

Plaintiff additionally has a history of drug abuse, specifically the use of "marijuana, crack/cocaine[,] and heroin." (AR 630). During his hospitalization in January 2020, psychiatrists at the hospital opined that his psychosis and schizophrenia is likely exacerbated by substance abuse. (AR 631). As of March 15, 2023, Plaintiff had been in remission from illicit drugs, including marijuana and alcohol, for three years, since his inpatient hospitalization. (AR 1478–79). Since being discharged from inpatient treatment, Plaintiff has remained medication compliant and sober, and he has seen lasting improvements.

In March 2020, Plaintiff began outpatient medication management with Margaret Ann Leiter, APN. (AR 639–43). Ms. Leiter noted Plaintiff's history of "paranoia, decreased sleep, low

moods, racing thoughts, hypomania, agitation, decreased motivation, difficulty concentrating, . . . [and] periods of some hopelessness [and] helplessness." (AR 639). Under Ms. Leiter's care, Plaintiff tried several medications for managing his symptoms including Zyprexa, Cogentin, Buspar, Lexapro, Aristada, and Vistaril. (*E.g.*, AR 646, 705, 707, 712). For his reported concentration and social anxiety issues, Plaintiff was prescribed Wellbutrin, which he has repeatedly described as helpful in managing his symptoms throughout the course of his treatment. (*E.g.*, AR 1026, 1103–04).

Plaintiff did not report any of the extreme symptoms that prompted his January 2020 hospitalization during treatment with Ms. Leiter. He consistently denied having hallucinations, delusions, and suicidal or homicidal ideations during that time. (*E.g.*, 645, 656, 660, 699, 1102, 2374). Ms. Leiter additionally noted that Plaintiff was sleeping and eating normally, abstaining from drug and alcohol abuse, was medication compliant, had a normal appearance, had a goal-oriented thought process, and had normal behavior, speech, and affect. (*E.g.*, 1074, 1128, 2374). In his meetings with Ms. Leiter, Plaintiff regularly reported going to the gym and exercising. (*E.g.*, 699, 712–13, 974, 1114, 1129). Based on Plaintiff's self-reports and presentation at appointments, Ms. Leiter often described Plaintiff as "doing well mentally," "pleasant," and "stable." (*E.g.*, AR 974).

While undergoing medication management, Plaintiff participated in additional forms of treatment. He began individual weekly therapy sessions in October 2021. (AR 1069). Plaintiff's therapist consistently noted that he was doing "[g]reat" or "well." (*E.g.*, AR 1040, 1046, 1048, 1138, 1140). Plaintiff told his therapist about his personal growth and believed he had made progress since getting a proper diagnosis and medication. (AR 1182). He additionally participated in a partial care program twice a week, for six hours each session. (AR 50–51).

Apart from his mental health, Plaintiff was diagnosed with pulmonary emphysema. (AR 678). Additionally, Plaintiff dislocated his shoulder and suffers from shoulder pain, and he attends physical therapy to manage the pain. (AR 70, 1230).

One medical opinion was submitted regarding Plaintiff's functional limitations. In March 2023, Ms. Leiter opined that Plaintiff has marked limitations in understanding, remembering, and carrying out simple instructions, and in his ability to make judgments on simple work-related decisions. (AR 1477–78). Ms. Leiter additionally opined that Plaintiff has extreme limitations in his understanding, remembering, and carrying out complex instructions, and in his ability to make judgements on complex work-related decisions. (*Id.*). Ms. Leiter described marked limitations in Plaintiff's ability to interact appropriately with the public, supervisors, and co-workers, and in his ability to respond appropriately to usual work situations and to changes in a routine work setting. (*Id.*).

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citation omitted). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citations omitted); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such

      relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (cleaned up); *see also Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009).

      The substantial evidence standard is a deferential standard, and an ALJ's decision cannot be set aside merely because a Court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. N.L.R.B.*, 804 F.2d 808, 812 (3d Cir. 1986) (citations omitted); *see e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citation omitted).

      Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). "The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Id*. The Court has a duty to "'review the evidence in its totality,' and 'take into account whatever in the record fairly detracts from its weight.'" *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997)). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Hum. Servs.,* 722 F.2d 1150, 1153 (3d Cir. 1983) (citation omitted). Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citation omitted).

### B. Sequential Evaluation Process

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)–(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (internal citations and footnote omitted) (alterations in original).

### III. ALJ DECISION

At step one, the ALJ found that Plaintiff had not engaged substantial gainful activity since his alleged onset date of January 21, 2020. (AR 19).

At step two, the ALJ determined that Plaintiff had the following severe impairments: emphysema, degenerative disc disease, shoulder disorder, schizoaffective disorder, and anxiety disorder. (*Id.*). The ALJ considered these impairments to significantly limit Plaintiff's ability to perform basic work activities. (*Id.*). As for Plaintiff's substance abuse disorder, the ALJ found that this condition did not impose more than minimal work-related limitations and was thus non-severe. (*Id.*).

At step three, the ALJ found that none of Plaintiff's impairments, individually or in combination, met or medically equaled the severity of any listing. (*Id.*). Specifically, the ALJ found moderate limitations in all four broad functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself. (AR 20).

Before making the step four determination, the ALJ found that Plaintiff had the RFC to perform light work subject to the following limitations:

> [C]an frequently perform the postural maneuvers, but never climb ladders, ramps or scaffolds; can only occasionally reach overhead; and must avoid concentrated exposure to hazards. Additionally, the claimant is capable of simple, routine tasks that are goal-oriented rather than production-paced in a stable workplace, defined as one with few, if any, changes of setting, processes and tools, involving only occasional interaction with supervisors and co-workers, but no significant interaction with the general public, even by telephone.

(AR 21). In formulating this RFC, the ALJ evaluated the opinion evidence and found the assessment of Ms. Leiter to be "not persuasive." (AR 24). Specifically, the ALJ found that Ms. Leiter's March 2023 opinion—which assessed marked to extreme limitations in all areas of functioning, and noted significant trouble with concentrating, short term memory problems, chronic anxiety, and racing thoughts—was inconsistent with the treatment history as of the date of examination. (*Id.*). The ALJ emphasized that the record in its entirety supports Plaintiff's "good response to treatment," and that both Plaintiff's self-reports and medical professionals'

9

observations highlighted Plaintiff's symptom improvement. (AR 25). The records additionally contained findings that Plaintiff's more extreme symptoms had been ameliorated through medication management. (*Id.*).

At step four, the ALJ considered Plaintiff's RFC along with the physical and mental demands of a short-order cook, prep cook, warehouse worker, and waiter and found that Plaintiff was not able to perform any of the jobs as generally performed. (AR 26). Accordingly, the ALJ found that Plaintiff could not return to his past relevant work. (*Id.*).

At step five, the ALJ, relying on the testimony of the VE, found that a significant number of jobs—i.e., approximately 220,000 jobs as a sealing operator; approximately 210,000 jobs as an eyelet machine operator; and approximately 55,000 jobs as an inspector packer—existed in the national economy and could be performed by an individual of Plaintiff's vocational profile, which the ALJ determined to be consistent with the information contained in the Dictionary of Occupational Titles and the RFC. (AR 27–28). The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act for the relevant time period. (*Id.*).

## IV. <u>DISCUSSION</u>

In his appeal, Plaintiff asserts two alleged errors within the ALJ's decision. First, Plaintiff contends that by not accounting for Plaintiff's inpatient treatment and frequent therapy appointments in crafting the RFC, the ALJ failed to account for the "total limiting effects" of Plaintiff's impairments. (Pl.'s Br., ECF No. 14 at 11). Second, Plaintiff argues that the ALJ failed to properly evaluate Ms. Leiter's medical opinion. (*Id.* at 16). The Court finds Plaintiff's arguments unpersuasive and, for the reasons that follow, affirms the decision of the ALJ.

### A. The ALJ Properly Accounted for the Total Limiting Effects of Plaintiff's Impairments in Crafting the RFC.

Plaintiff argues that the ALJ erred in failing to consider Plaintiff's thirty-eight-day inpatient psychiatric hospitalization beginning on his alleged onset date of disability. (*Id.* at 14). He further argues that because of his participation in a partial care program,[3] which is necessary for his continued recovery, he cannot maintain a consistent work schedule. (*Id.*). The Court is not persuaded that remand is warranted on either ground.

For a claimant to qualify for DIB, their "inability to engage in any substantial gainful activity" caused by an impairment "must last, or must be expected to last, for at least 12 months." *Barnhardt v. Walton*, 535 U.S. 212, 214–15, 225 (2002) (cleaned up) (holding that the Social Security Administration's interpretation of the statutory definition of "disability," as quoted, was based on a lawful construction of the statute). Thus, short-lived functional limitations that improve with treatment and resolve within twelve months do not qualify for inclusion in an ALJ finding of disability. *See, e.g.*, *Creegan v. Comm'r of Soc. Sec.*, 142 F. App'x 567, 569 n.2, 570 (3d Cir. 2005) ("Creegan's single episode of major depression did not meet the durational requirements of the Act," where Creegan "quickly improved with medication").

The Court agrees that the ALJ properly evaluated Plaintiff's time in inpatient care in crafting the RFC. Although Plaintiff spent thirty-eight days hospitalized at the onset of his alleged disability, the record shows Plaintiff's significant improvement with treatment and makes no mention of any continuing inpatient hospitalization. Further, Plaintiff's inability to work due to the inpatient treatment itself did not last twelve months, as he was discharged after thirty-eight

---

[3] Plaintiff's therapy appointments occur twice weekly, with each appointment lasting six hours. (AR 50–51).

days with an "adequate" mental examination. (AR 631). Because Plaintiff's hospitalization did not prevent him from working for a period of twelve months, and he has improved significantly with treatment, the hospitalization need not be further considered in crafting the RFC. *See Creegan*, 142 F. App'x at 569 n.2, 570; *Barnhardt*, 535 U.S. at 214–15, 225.

Plaintiff also argues that the ALJ failed to consider the limiting effect of his ongoing therapy appointments. Under the Social Security Act, a claimant bears the burden of establishing their disability as defined by the Act. *Messner v. Califano*, 496 F. Supp. 1007, 1008 (E.D. Pa. 1980). Where a claimant does not testify that appointments would result in work-related absences and no medical providers opine on that issue, that fact is "[f]atal" to a challenge if a claimant appeals on the basis that the ALJ failed to consider work-preclusive absences caused by treatment. *See Curtiss v. Kijakazi*, No. 22-35371, 2023 WL 3918687, at *2 (9th Cir. June 9, 2023) ("Fatal to her challenge here, Curtiss did not present evidence that her monthly appointments would preclude her from working on a regular and continuing basis."). Further, partial program obligations are "clearly scheduled with discrete beginning and end times," not "sporadic and unpredictable," allowing a claimant to maintain a work schedule without creating impermissible absences. *Santiago Hernandez v. Comm'r of Soc. Sec.*, No. 19-18528, 2020 WL 5229373, at *7 (D.N.J. Sept. 2, 2020) (discussing the plaintiff's partial five hour many days a week hospitalization obligations). Additionally, this Court has noted that "[m]any applicants might have competing obligations or scheduling conflicts, even unavoidable ones, that would interfere with regular employment. [Yet, courts] however, [do not] equate[ ] an *obligation,* even a court-imposed one, with a *disability* within the meaning of the Social Security Act." *Id.* at 7 (citations omitted).

Here, Plaintiff did not present evidence at either of his hearings establishing that his medical appointments would cause work-preclusive absences, nor did any medical provider opine

12

that these appointments would preclude work attendance. That alone is fatal to Plaintiff's challenge. *See Curtiss*, 2023 WL 3918687 at *2. Even if that were not the case, Plaintiff's therapy appointments are "scheduled," which would allow Plaintiff to maintain a work schedule without impermissible absences. *See Santiago Hernandez*, 2020 WL 5229373 at 7. Finally, Plaintiff has not demonstrated that his therapy appointments are only offered during work hours so as to create a burdensome scheduling issue, as would be his burden to do. Instead, the record shows that Plaintiff's appointments were flexible, often offered via Zoom. (*See, e.g.*, AR 964). The Court therefore finds that the ALJ did not err in concluding that Plaintiff's appointments do not preclude him from maintaining a work schedule.

In short, the ALJ properly accounted for the total limiting effects of Plaintiff's impairments in crafting the RFC. The Court finds no reversible error in the ALJ's consideration, or lack thereof, of Plaintiff's inpatient treatment and frequency of therapy appointments.

### B. The ALJ Provided a Sufficient and Supported Explanation for Discounting the Medical Opinion of Ms. Leiter.

Plaintiff contends that the ALJ failed to properly evaluate the medical opinion of Ms. Leiter. (Pl.'s Br., ECF No. 14 at 16–17). Specifically, he argues that the ALJ failed to articulate how he considered the supportability and consistency factors when determining the persuasiveness of Ms. Leiter's opinion, particularly as it relates to Plaintiff's alleged work-preclusive limitations. (*Id*.). Plaintiff further argues that the ALJ's persuasiveness finding is "not based on substantial evidence." (*Id.* at 20). Plaintiff contends that these alleged deficiencies were not harmless because the ALJ's RFC did not adequately reflect his work-preclusive limitations. (*Id.* at 17). The Court disagrees.

An ALJ is not required to adopt a medical opinion in full, even when that opinion is deemed persuasive. Rather, the ALJ must evaluate the persuasiveness of medical opinions in accordance

with the factors set forth in 20 C.F.R. § 404.1520c, giving particular consideration to supportability and consistency. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citations omitted). The Third Circuit has made clear that it is the ALJ—not treating or examining physicians or State agency consultants—who must make the ultimate findings on disability and RFC. *Id*. In reaching those findings, the ALJ is entitled to weigh all evidence and is not bound to accept any medical expert's opinion or theory but may instead weigh the evidence and draw reasonable inferences. *Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) (citation omitted). The ALJ must consider all relevant evidence and must provide some explanation for rejecting probative evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citation omitted). The ALJ also has discretion to resolve conflicts in the evidence and determine the extent to which any opinion should be credited. *Brown*, 649 F.3d at 196–97 (citations omitted). The ALJ's factual findings need not follow a particular format, so long as the decision includes sufficient development of the record and explanation of findings to permit meaningful judicial review. *Jones*, 364 F.3d at 505 (citation omitted); *see also Jaclyn G. v. Comm'r of Soc. Sec.*, No. 21-11101, 2022 WL 2116866, at *6 (D.N.J. June 13, 2022) (noting that ALJ decisions are reviewed "as a whole") (citation omitted).

Here, the ALJ found Ms. Leiter's opinion "not persuasive" because it was "not consistent with the treatment history as of the date of the examination." (AR 24). Plaintiff claims that the ALJ has not properly explained his reasoning for discounting these opinions under the supportability and consistency standard. (Pl.'s Br., ECF No. 14 at 16–20). But the ALJ's persuasiveness analysis relied primarily on inconsistency with the overall record, and that inconsistency is well supported by the record. As the ALJ noted, Plaintiff's symptoms have been largely ameliorated through medication management and group therapy. (AR 24–25). Plaintiff reported that Wellbutrin improved his focus and concentration, engages in routine activities like going to the gym, has made

friends in group therapy, and was seeking vocational training as an electrician. (*Id.*). These activities are facially inconsistent with Ms. Leiter's opinion that Plaintiff has marked extreme limitations in his ability to perform work related activities, such as understanding simple instructions and interacting appropriately with others. (*See* AR 1477–78). Although the ALJ's discussion of Ms. Leiter's opinion was brief, he provided supporting analysis and provided an explanation for finding her opinion unpersuasive. Indeed, the ALJ provided several examples of how Ms. Leiter's opinion lacked support from the objective evidence and explained why her opinion is inconsistent with the record. (AR 24–25). That suffices. *See Jones*, 364 F.3d at 505 (citation omitted); *Plummer*, 186 F.3d at 429 (citation omitted); *see also Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024) ("[A]dministrative judges [are required] to explain only the dispositive reasons for their decisions, not everything else that they considered."); *Phillips v. Barnhart*, 91 F. App'x 775, 780 n.7 (3d Cir. 2004).

Plaintiff also challenges whether the ALJ properly evaluated and explained the persuasiveness of Plaintiff's self-described limitations. (Pl.'s Br., ECF No. 14 at 20–21). Plaintiff argues that because the ALJ did not adequately consider Ms. Leiter's medical opinion, the ALJ could not have properly evaluated Plaintiff's self-described limitations in relation to the medical evidence. (*Id.* at 20). However, as explained above, the ALJ adequately considered the medical opinion of Ms. Leiter and properly evaluated Plaintiff's self-described limitations in relation to the medical evidence.

Accordingly, the ALJ adequately evaluated and explained his findings as to Ms. Leiter. Though his explanations were concise, they are supported by substantial evidence and the decision, read as a whole, reveals a clear and rational basis for the weight assigned. The Court finds no reversible error in the ALJ's treatment of the medical opinion.

15

## **CONCLUSION**

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Commissioner.

An appropriate Order will follow.

*[signature: Christine P. O'Hearn]*

**CHRISTINE P. O'HEARN**
**United States District Judge**